IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINKA LIGHTING, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:06CV00995 |
| | § | |
| MAXIM LIGHTING INTERNATIONAL, | § | JURY DEMANDED |
| INC., MAXIM LIGHTING, INC., AND | § | |
| MAXIM GROUP COMPANIES. | § | |
| | § | |
| Defendants. | | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Lisa H. Meyerhoff
Texas Bar No. 14000255
Email:  lisa.meyerhoff@bakernet.com
**BAKER & MCKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Telephone No.  214 978 3035
Facsimile No.  214 978 3099

Myall S. Hawkins
Texas Bar No. 09250320
Email:  myall.hawkins@bakernet.com
Valerie K. Friedrich
Texas Bar No. 00790721
Email:  valerie.k.friedrich@bakernet.com
Todd Y. Brandt
Texas Bar No. 24027051
Email:  todd.brandt@bakernet.com
Tan H. Pham
Texas Bar No. 24046628
Email: tan.pham@bakernet.com
**BAKER & McKENZIE LLP**
711 Louisiana, Suite 3400
Houston, Texas 77002
Telephone No. 713 427 5000
Facsimile No. 713 427 5099
ATTORNEYS FOR PLAINTIFF MINKA
LIGHTING, INC.

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF THE ARGUMENTS ............................................................. 1

II.    BACKGROUND FACTS .......................................................................... 2

III.   PLAINTIFF MINKA IS ENTITLED TO SUMMARY JUDGMENT ............................ 4

      A.      Summary Judgment Standard .................................................................. 4

      B.      Infringement of a Design Patent Occurs When a Patented Design and an Accused Design Have an Overall Visual Similarity ............................................... 4

           1.      The *Gorham* "Ordinary Observer" Test Requires a Broad Interpretation of a Design Patent Claim .................................................... 6

           2.      The Point of Novelty Test Requires that the Accused Design Appropriate the Novelty in the Patented Design .................................... 10

           3.      In Cases Where the Accused Design does not Literally Infringe a Design Patent, Infringement can still Occur Under the Doctrine of Equivalents ............................................................................ 11

      C.      As Required, the Court Has Construed the '515 Patent Claim ........................... 12

      D.      An Ordinary Observer Would Find that the Morrow Bay Light Fixture is Substantially Similar to the '515 Patent Design, and that the Morrow Bay Light Fixture Appropriates the Novel Features of the '515 Patent ..................... 13

           1.      A Visual Comparison of the Morrow Bay Light Fixture with the '515 Patent Design Demonstrates Substantial Similarity ....................... 13

           2.      The Similarities of the Accused Morrow Bay Light Fixture to the Patented Design Result from an Appropriation of Novel Features Shown in the '515 Patent ...................................................... 15

                a.      The '515 Patent design has four points of novelty over the prior art .......................................................................... 15

                b.      The Morrow Bay Light Fixture Appropriates the Points of Novelty that Distinguish the '515 Patent from the Prior Art ....... 20

      E.      The Court Has Construed the '591 Patent Claim ........................................ 21

**TABLE OF CONTENTS**
(continued)

Page

F. An Ordinary Observer Would Find that the Cambria Light Fixture Support Arm is Substantially Similar to the '591 Patent Design, and that the Cambria Fixture Support Arm Appropriates the Novel Features of the '591 Patent.................................................................................................... 22

    1. A Visual Comparison of the Cambria Light Fixture Support Arm with the '591 Patent Design Demonstrates Substantial Similarity ......... 22

    2. The Similarities of the Accused Cambria Arm to the Patented Design Result from an Appropriation of Novel Features Shown in the '591 Patent ...................................................................................... 23

        a. The '591 Patent design has four points of novelty over the prior art.................................................................................... 23

        b. The Cambria Arm Appropriates the Points of Novelty that Distinguish the '591 Patent from the Prior Art ........................... 27

G. The Court Has Construed the '052 Patent Claim.................................................. 28

H. An Ordinary Observer Would Find that the Tuscan Estate Fixture is Substantially Similar to the '052 Patent Design, and that the Tuscan Estate Light Fixture Appropriates the Novel Features of the '052 Patent..................... 29

    1. A Visual Comparison of the Tuscan Estate Light Fixture with the '052 Patent Design Demonstrates Substantial Similarity ....................... 29

    2. The Similarities of the Accused Tuscan Estate to the Patented Design Result from an Appropriation of Novel Features Shown in the '052 Patent ...................................................................................... 30

        a. The Design in the '052 Patent is Significantly Different from the Prior Art........................................................................ 30

        b. The Tuscan Estate Light Fixture Appropriates the Points of Novelty that Distinguish the '052 Patent from the Prior Art ....... 33

I. Even if the Accused Light Fixtures were Found not to Literally Infringe the Patents-in-Suit, Minka is Entitled to Summary Judgment Under the Doctrine of Equivalents. ..................................................................................... 34

IV. CONCLUSION............................................................................................................. 35

## TABLE OF AUTHORITIES

## FEDERAL CASES

*Amini Innovation v. Anthony California*,
   439 F.3d 1365 (Fed. Cir. 2006)...................................................................................9

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).................................................................................................4

*Avia Group International, Inc. v. L.A. Gear Calif., Inc.*,
   853 F.2d 1557 (Fed. Cir. 1988)..................................................................4, 20, 27, 33

*Barmag Barmer Maschinenfabrik v. Murata Machinery, Ltd.*,
   731 F.2d 831 (Fed. Cir. 1984)...................................................................................4

*Braun Inc. v. Dynamics Corp. of America*,
   975 F.2d 815 (Fed. Cir. 1992)...............................................................7, 9, 12, 21, 29

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).................................................................................................4

*Contessa Food Products, Inc. v. Conagra, Inc.*,
   282 F.3d 1370 (Fed. Cir. 2002)...............................................................4, 5, 8, 10, 12

*Egyptian Goddess v. Swisa*,
   2007 U.S. App. LEXIS 27456 (Fed. Cir., Nov. 26, 2007) ...........................................5

*Elmer v. ICC Fabricating, Inc.*,
   67 F.3d 1571 (Fed. Cir. 1995)...................................................4, 5, 10, 12, 21, 24, 29

*Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*,
   162 F.3d 1113 (Fed. Cir. 1998)................................................................5, 8, 9, 23, 30

*Gorham Manufacturing Co. v. White*,
   81 U.S. 511 (1871)...............................................................................5, 6, 7, 8, 9, 11, 15

*Keystone Retaining Wall System, Inc. v. Westrock, Inc.*,
   997 F.2d 1444 (Fed. Cir. 1993).................................................................................7

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
   988 F.2d 1117 (Fed. Cir. 1993).......................................................................4, 10, 14

*Lamps Plus, Inc. v. Dolan*,
   2003 U.S. Dist. LEXIS 25545 (N.D. Tex. 2003).........................................5, 6, 10, 12

iii

*Lawman Armor Corp. v. National, LLC*,
   449 F.3d 1190 (Fed. Cir. 2006)..................................................................................10

*Lee v. Dayton-Hudson Corp.*,
   838 F.2d 1186 (Fed. Cir. 1988)..................................................................................11

*Litton Systems v. Whirlpool*,
   728 F.2d 1423 (Fed. Cir. 1984)..............................................................................6, 10

*Minka Lighting, Inc. v. Craftmade International, Inc.*,
   2001 U.S. Dist. LEXIS 14199, 2001 WL. 1012685 (N.D. Tex. 2001).........................5

*Oakley, Inc. v. International Tropic-Cal, Inc.*,
   923 F.2d 167, 169 (Fed. Cir. 1991)......................................................................10, 24

*OddzOn Products, Inc. v. Just Toys, Inc.*,
   122 F.3d 1396 (Fed. Cir. 1997)...........................................................5, 7, 12, 21, 28

*Payless Shoesource, Inc. v. Reebok International Ltd.*,
   998 F.2d 985 (Fed. Cir. 1993)...................................................................................10

*Spalding & Evenflo Co., Inc. v. Graco Metal Products Inc.*,
   18 U.S.P.Q. 2d 2029 (N.D. Ohio 1991).......................................................................6

*Sun Hill Industries Inc. v. Easter Unlimited Inc.*,
   48 F.3d 1193 (Fed. Cir. 1995).........................................................................6, 11, 34

*Unidynamics Corp. v. Automatic Products International*,
   157 F.3d 1311 (Fed. Cir. 1998)..................................................................................10

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
   117 S. Ct. 1040 (1997)................................................................................................11

*ZB Industrial Inc. v. Conagra Inc.*,
   56 U.S.P.Q. 2d 1739 (C.D. Cal. 2000.............................................................12, 21, 28

## FEDERAL STATUTES

35 U.S.C. § 282.............................................................................................................9, 16, 31

Fed. R. Civ. P. 56(c) ..........................................................................................................1, 4

Pursuant to Federal Rule of Civil Procedure 56(c), Local Rule 56, and the Court's Scheduling Order, Plaintiff Minka Lighting, Inc. ("Plaintiff" or "Minka") files its brief in support of its Motion for Partial Summary Judgment ("Motion") that Defendants Maxim Lighting International, Inc., Maxim Lighting, Inc., and Maxim Group Companies (collectively "Defendants" or "Maxim") infringe Minka's U.S. Patent Nos. D455,515 ("the '515 Patent"), D361,591 ("the '591 Patent"), and D535,052 ("the '052 Patent") (collectively "the Patents-in-Suit"). The Court should grant Plaintiff's Motion because there are no genuine issues of material fact that Defendants' light fixtures infringe the Patents-in-Suit.

## I.      SUMMARY OF THE ARGUMENTS

- The infringer cannot isolate individual features of the design (a parts list) to take away from the overall visual appearance.

- The test for patent infringement does not require identical designs.

- The Court may not compare the accused product with the Court's claim construction in the ordinary observer test.

- The Court may not rely on its claim construction in undertaking the point of novelty analysis.

- The points of novelty test must be determined solely with reference to the prior art.

- The infringer cannot refer and rely on the patentee's original points of novelty that have been subsequently amended as a matter of right.

- The Court may rely on the Doctrine of Equivalents for infringement.

- Maxim's Morrow Bay, Cambria and Tuscan Estate light fixtures infringe the '515, '591 and '052 Patents because (1) the overall appearances are substantially

similar to the patented designs; and (2) Maxim's lighting fixtures appropriated all the points of novelty of the Patents-in-Suit.

## II.     BACKGROUND FACTS

Minka designs, distributes, markets and sells high quality lighting products through over 1,200 authorized distributors who sell Minka's products to end consumers, including home owners and interior designers.  (Declaration of P. Wilson ("Wilson Decl."), ¶ 3, APP 4-5).  In its over 25 years of existence, Minka has become an industry leader in the lighting product industry, with over 500 issued patents for its creative and novel lighting fixture and ceiling fan designs. (Wilson Decl., ¶ 4, APP 4-5).

In 2002, Minka introduced the Ardmore light fixture into the U.S. market.  (APP 6-7). Minka filed an application for design patent on May 10, 2001 covering the design embodied in Minka's Ardmore light fixture.  The application issued as the '515 Patent on April 9, 2002. (APP 8-11).  Thus, the Ardmore light fixture represents a commercial embodiment of the design depicted in the '515 Patent.

In 2002, Minka introduced the Harrison light fixture into the U.S. market.  (APP 12-13). Minka filed an application for design patent for the support arm of the Harrison light fixture on August 24, 2001.  The application issued as the '591 Patent on August 13, 2001. (APP 14-16). Thus, the Harrison lamp support arm represents a commercial embodiment of the design depicted in the '591 Patent.

In 2006, Minka introduced the Treville light fixture into the U.S. market.  (APP 17-18). Minka filed an application for design patent on January 4, 2006 covering the design embodied in the Treville light fixture.  The application issued as the '052 Patent on January 9, 2007. (APP 19-24)  Thus, the Treville light fixture represents a commercial embodiment of the design depicted in the '052 Patent.

Prior to designing the accused light fixtures, Defendants were aware of Minka's Ardmore, Harrison, and Treville light fixtures (collectively "Minka's light fixtures") (APP 26-27), and their success in the marketplace.  (APP 30).  In an effort to profit from the success enjoyed by Minka's light fixtures, and despite the existence of the Patents-in-Suit, Defendants decided to sell infringing light fixtures under the trademarks Morrow Bay, Cambria, and Tuscan Estate. (collectively "the accused light fixtures")[1] (APP 31-33, respectively).

As a result of Defendants' infringing activities, on June 6, 2006, Minka filed this lawsuit, in part,[2] because of Maxim's manufacture, marketing, and sale of the accused light fixtures.  In the Complaint, Minka alleged that the accused light fixtures infringe the Patents-in-Suit. On March 18, 2008, the Court issued its claim construction order for the Patents-in-Suit.  Plaintiff Minka now moves the Court to enter summary judgment in Minka's favor because there are no genuine issues of material fact that Defendants' products infringe the Patents-in-Suit.

While the Defendants will deny that the patented designs had any influence on Defendants' decision to offer their accused light fixtures for sale, the evidence shows that Defendants had access to the patented designs prior to designing the accused light fixtures.  (APP 26-27).  In addition, Defendants have no record, *i.e.*, initial drawings or design drawings that indicate that they independently designed the infringing fixtures.  (APP 28-29).  Moreover, based on the undeniable similarities between the patented designs and the accused light fixtures, it is reasonable to conclude that the accused light fixtures resulted from Defendants' copying of Minka's patented designs.

---

1 After reviewing the Court's claim construction order and considering other business issues, Minka moved to dismiss claims relating to the '766 Patent from the lawsuit.

2 Minka also sued Maxim for infringing eight of Minka's registered copyrights and for breach of a prior settlement agreement where Minka had sued Maxim for patent infringement relating to other patented lighting products.

### III.      PLAINTIFF MINKA IS ENTITLED TO SUMMARY JUDGMENT.

#### A.      Summary Judgment Standard.

A court **must** enter summary judgment of infringement where no genuine issue of material fact exists, and a patent claim is infringed as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The Federal Circuit has long supported the use of summary judgment when "wasteful utilization of the jury process and judicial resources" may be avoided by disposing of an issue as a matter of law.  *Barmag Barmer Maschinenfabrik v. Murata Machinery, Ltd.*, 731 F.2d 831, 835 (Fed. Cir. 1984).

To defeat a properly supported summary judgment motion, the non-moving party must set forth specific facts showing that there is a genuine dispute over a material fact. Fed. R. Civ. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, the "question is not the 'weight' of the evidence, but instead the presence of a genuine issue of material fact concerning infringement." *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1376 (Fed. Cir. 2002) (citing *Avia Group Int'l, Inc. v. L.A. Gear Calif., Inc.*, 853 F.2d 1557, 1565 (Fed. Cir. 1988)). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

#### B.      Infringement of a Design Patent Occurs When a Patented Design and an Accused Design Have an Overall Visual Similarity.

A design patent protects the non-functional aspects of an ornamental design as shown in a patent.  *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995).  An analysis of

whether a design patent is infringed requires a two-part inquiry.  First, the Court must properly construe the patent claim.  *Id*. In construing the claim in a design patent, the focus is on the overall visual impression of the design.  *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997).

Isolating individual features of the design detracts from the overall appearance of the patented design, and is contrary to the standards for analyzing design patent infringement.  *See Braun Inc. v. Dynamics Corp. of Am.*, 975 F.2d 815, 820 (Fed. Cir. 1992) (analysis should focus on design as a whole, not on isolated portions of patented design).  In other words, the Court should **not** provide a parts list to the jury, along with a description of what those parts separately look like.  *Lamps Plus, Inc. v. Dolan,* 2003 U.S. Dist. LEXIS 25545, *11 (N.D. Tex. 2003) (citing *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, 2001 U.S. Dist. LEXIS 14199, 2001 WL 1012685, *9 (N.D. Tex. 2001)).  The Court's description of the claim is only provided to assist the jury in its task of comparing the accused design with the **design patent**, rather than requiring the jury to compare the accused product to the Court's **claim construction**.  *Lamps Plus,* U.S. Dist. LEXIS 25545, at *12.[3]

In the second step of that infringement analysis, an accused design is compared to the patent drawings to determine whether the accused design infringes the patent.  *Elmer*, 67 F.3d at 1577.  This second step involves two distinct tests: (1) the ordinary observer test set forth in *Gorham Mfg. Co. v. White*, 81 U.S. 511 (1871); and (2) the point(s) of novelty test.  *Contessa Food Prods.,* 282 F.3d at 1377; *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co.*, 162 F.3d 1113, 1118 (Fed. Cir. 1998).

---

[3] In fact, the Federal Circuit recently questioned whether claim construction should even apply to design patents.  The Federal Circuit has certified that question for an *en banc* review.  *Egyptian Goddess v. Swisa*, 2007 U.S. App. LEXIS 27456 (Fed. Cir., Nov. 26, 2007).

Specifically, in deciding a summary judgment motion in a design patent case, a court is to look at the designs as an ordinary observer would, and determine whether, as a matter of law, the ordinary observer -- giving such attention as an ordinary observer of such objects would give -- could mistake the accused design for the patented design.  *See Spalding & Evenflo Co., Inc. v. Graco Metal Prods. Inc*., 18 U.S.P.Q.2d 2029, 2034 (N.D. Ohio 1991).  It is improper for a court to compare an accused product with the court's claim construction in undertaking the ordinary observer test.  *Lamps Plus*, U.S. Dist. LEXIS 25545, at *12.

In addition, a court must examine whether the allegedly infringing product appropriates the novel features of the patented design.  *Id.* (citing *Litton Systems v. Whirlpool*, 728 F.2d 1423,1444 (Fed. Cir. 1984)).  It is also improper for a court to rely on its claim construction in undertaking the point of novelty test. *Sun Hill Industries Inc. v. Easter Unlimited Inc.*, 48 F.3d 1193, 1197 (Fed. Cir. 1995).

It is improper for a court to focus on the differences between an accused product and the design patent drawings.  Rather, a court is required to view the overall visual appearance to determine whether the accused product infringes the patented design as shown in the patent's drawings.  Thus, in the present case, the Court must look at the overall ornamental appearances of the patented and accused light fixtures.  In doing so, the Court should determine that an ordinary observer would find that the patented and accused light fixtures are overall visually similar in their overall appearances.

### 1.     The *Gorham* " Ordinary Observer" Test Requires a Broad Interpretation of a Design Patent Claim.

In *Gorham,* the U.S. Supreme Court held that substantial similarity of the accused and patented designs should be viewed from the perspective of an ordinary observer, not from the perspective of an expert.  81 U.S. at 527-28.  The *Gorham* Court stressed the importance of examining the overall visual effect of the patented design in determining substantial similarity:

> If, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham*, 81 U.S. at 528.  The trier of fact must focus on the overall ornamental appearance of the claimed and accused designs, **not** on selected ornamental features in isolation.  *Id.* at 526 (true test of substantial similarity is overall effect on the eye); *Braun*, 975 F.2d at 820 (trier of fact must consider ornamental aspects of design as a whole and not merely isolated portions of patented design).  Accordingly, a proper infringement analysis under the first part of the two-part test turns on whether the accused product as a whole is substantially similar to the patented design as a whole.  *OddzOn*, 122 F.3d at 1405; *Keystone Retaining Wall Sys., Inc. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993).

The U.S. Supreme Court has held that the patented and accused designs **need not be identical** in order to find infringement of a design patent.  *Gorham,* 81 U.S. at 529 (design patent covering fork handle infringed by fork handle design with substantially similar outline, despite differences in surface ornamentation).  Indeed, the fork handle designs that the *Gorham* Court found to be substantially similar (and therefore infringing) had significant individual design differences.  *Id.* at 529-30 (finding substantial similarity based primarily on similarity, but not identically, of outlines of subject fork handles).  *See* Figure 1 below.

**FIGURE 1**




**Gorham's Patented Fork Handle
Design**

**White's Infringing Fork Handle
Designs**

An examination of the accused and patented designs in *Gorham* is instructive regarding the proper interpretation of the substantial similarity requirement.  First, the *Gorham* Court noted that there were differences in the outlines of the patented and accused fork handle designs.  81 U.S. at 529.  Nevertheless, the Supreme Court reasoned that an ordinary purchaser would not normally take notice of such differences unless he/she was on prior notice to make such a critical examination.  *Id*. at 530.

The *Gorham* Court then identified a laundry list of differences in the ornamentation between the accused and patented designs, including the absence of some patented elements in the accused designs and the presence of additional elements in the accused designs that were not present in the patented design.  *Id*.  Still, the Supreme Court determined that the accused and patented designs would be substantially similar in the eye of an ordinary purchaser, and thus the accused designs infringed the patented design.  *Id*. at 530-31.

The Federal Circuit has followed – as it must – the Supreme Court's precedent in *Gorham*.  *See, e.g., Contessa*, 282 F.2d at 1376 ("patented and accused designs do not have to be identical in order for design patent infringement to be found"); *Goodyear Tire & Rubber Co.*,

162 F.3d at 1117 ("minor changes in a design are often readily made without changing its overall appearance.").  Similarly in *Braun,* the Federal Circuit stated that despite obvious differences in the patented Braun blender and Waring's accused blender, the two designs share a fluid, ornamental, aerodynamic design.  Accordingly, the Federal Circuit affirmed the lower court's ruling of infringement.  *Braun*, 975 F.2d at 820.  *See* Figure 2 below.  Indeed, the patent statute (*e.g.*, 35 U.S.C. § 282) contemplates that "minor changes in a design are often readily made without changing its overall appearance."  *Goodyear*, 162 F.3d at 1117 (discussing patent statute's provision for infringement by "colorable imitation").

**FIGURE 2**

     

**Braun's Patented Blender**          **Waring's Infringing Blender Design**
**Design**

Thus, in determining whether an ordinary observer would perceive a patented design and an accused design to be substantially similar, "the **controlling** consideration is the resultant effect" of the overall design, **not** individual differences between the accused and patented designs.  *Gorham*, 81 U.S. at 526; *Amini Innovation v. Anthony California*, 439 F.3d 1365, 1371-72 (Fed. Cir. 2006) (emphasis added) (reversing summary judgment of non-infringement where trial court relied on absence of specific ornamentation elements in accused design and failed to

consider overall design); *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993) (existence of some differences does not prevent finding infringement).

   **2.  The Point of Novelty Test Requires that the Accused Design Appropriate the Novelty in the Patented Design.**

  Under the point of novelty test, "the accused device must appropriate the novelty in the patented device which distinguishes it from the prior art." *Unidynamics Corp. v. Automatic Prods. Int'l*, 157 F.3d 1311, 1323-24 (Fed. Cir. 1998) (quoting *Litton*, 728 F.2d at 1444). A point of novelty may include the combination of features in the patented design. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1126 (Fed. Cir. 1993); *Lawman Armor Corp. v. National, LLC,* 449 F.3d 1190, 1192 (Fed. Cir. 2006) (combination of design elements itself may constitute point of novelty). The *Lawman* court was careful to note the differences between the overall visual appearance of a design (which cannot function as a point of novelty) and the combination of novel features (which may be a point of novelty). 449 F.3d at 1192. A proper point of novelty analysis should therefore include a comparison between the patented design drawings and the prior art to identify the distinguishing points of novelty of the patented design.

  Identification of the points of novelty of a patented design is a question of fact determined by the fact finder upon comparing the prior art with the design patent. *Elmer*, 67 F.3d at 1577 (citing *Oakley, Inc. v. International Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991)) (identification of points of novelty is issue of fact). The Federal Circuit has repeatedly emphasized the distinction between the "ordinary observer" and "point of novelty" tests: "it is legal error to merge the two tests, for example by relying on the claimed overall design as the point of novelty." *Contessa Food Prods.*, 282 F.3d at 1377. Thus, it is improper to rely on a court's claim construction in undertaking the point of novelty analysis. *Lamps Plus*, 2003 U.S. Dist. LEXIS 25545, at *11. Rather, the fact finder must determine the points of novelty with reference solely to the relevant prior art. For example, the Court's claim construction of the '515

Patent identifies over twelve different design features of the '515 Patented design.  In contrast, Plaintiff has identified only five design elements that are not found in the prior art that constitute the points of novelty of the '515 Patent.  Thus, in undertaking the point of novelty analysis, the Court must not improperly merge the "ordinary observer" and "point of novelty" tests by incorporating design features from the Court's claim construction as points of novelty.  *Sun Hill*, 48 F.3d at 1197 (**error** for court to evade point of novelty test by looking to overall visual appearance).

### 3.    In Cases Where the Accused Design does not Literally Infringe a Design Patent, Infringement can still Occur Under the Doctrine of Equivalents.

Even if the accused design is sufficiently different from the patented design to avoid literal infringement (which is not true in the present case) the Defendants' accused designs can still infringe the Patents-in-Suit under the Doctrine of Equivalents.  In general, the Doctrine of Equivalents is an equitable doctrine that prevents an alleged infringer from avoiding infringement if there is "equivalence" between the elements of the accused design and the claimed elements of the patented invention.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 117 S. Ct. 1040, 1045 (1997).  As with utility patents, the Federal Circuit has conclusively ruled that the Doctrine of Equivalents applies equally to design patents.  *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1190 (Fed. Cir. 1988) (doctrine of equivalents applies to design patents).  In the context of a design patent, infringement under the Doctrine of Equivalents requires that the accused design meet the *Gorham* test of similarity of overall ornamental appearance such that an ordinary observer would be induced to purchase one design thinking it was another.  *Id.*

Taking the guidance of the *Lee* court, the Federal Circuit in *Sun Hill Industries* elaborated that the Doctrine of Equivalents applies "when the accused product includes features equivalent to the novel claimed design features."  48 F.3d at 1199.  As discussed below, it is quite clear that

Defendants appropriated Plaintiff's novel features in its Patents-in-Suit into Defendants' accused lighting product designs.

> **C.     As Required, the Court Has Construed the '515 Patent Claim.**

In accordance with the first step of the infringement analysis, the Court has construed the claim of the '515 Patent as follows:

> The claim of the '515 patent is "[t]he ornamental design for the lamp housing, as shown and described." The design of the lamp housing in the '515 patent is a combination of a top finial, a body, and a lower medallion. The top finial has two sections with a substantially bell-shaped upper section covered in a plurality of evenly spaced ornamental leaves and a lower flared section tapering from top to bottom. The lower tapered section of the top finial abuts an upper most ring of the design's body. The body has a cap that is substantially bell shaped with three circular rings at its top section. Below the body cap is a band having a horizontal ridge that fits into the bell-shaped cap; below the horizontal ridge is a tapered convex ridge that flows into a second horizontal ridge. Below the second horizontal ridge is a tapered concave ridge that encloses the upper portion of the caged body. The caged body portion includes a vase-shaped globe with four vertical bars having vertical ridges extending from the circular band of the body cap to the lower medallion and curved to outline the shape of the glass globe. The lower medallion has concave sides with a wider diameter at a top end and tapering to a smaller diameter at a lower end.

The Court's claim construction notes the ornamental features that produce the overall appearance of the design. *OddzOn*, 122 F.3d at 1405; *ZB Indus. Inc. v. Conagra Inc.*, 56 U.S.P.Q.2d 1739, 1741 (C.D. Cal. 2000), *vacated on other grounds*, *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002). In applying the first step of the infringement analysis, however, it is the overall appearance of the design, **not** the individual ornamental features included in the Court's construction, that control. *Elmer*, 67 F.3d at 1577; *Braun*, 975 F.2d at 820; *Lamps Plus*, 2003 U.S. Dist. LEXIS 25545, at *11 (accused product must be compared to design patent drawings not to the claim construction).

**D.    An Ordinary Observer Would Find that the Morrow Bay Light Fixture is Substantially Similar to the '515 Patent Design, and that the Morrow Bay Light Fixture Appropriates the Novel Features of the '515 Patent.**

    **1.    A Visual Comparison of the Morrow Bay Light Fixture with the '515 Patent Design Demonstrates Substantial Similarity.**

One of the similarities in the overall appearance between the patented and accused light fixture designs is the silhouette or contour created by the designs, when viewed from the side.  In the '515 Patent design, the appearance of the silhouette is created by a combination of ornamental features described in the Court's claim construction as a combination of a top finial (1), a body (2), and a lower medallion (3).  *See* Figure 3 below.  The silhouette created by the Morrow Bay light fixture is virtually identical, as can be seen in Figure 3 below.  In addition, the likelihood that ordinary purchasers would be deceived into purchasing the Morrow Bay light fixture based on its similarity to the patented design is further demonstrated by the relatively short amount of time that light fixture consumers typically spend making a purchasing decision. (Wilson Decl. ¶ 6, APP 5).  (on average, consumers spend about fifteen minutes deciding what light fixture to purchase).

<u>**FIGURE 3**</u>



Minka's '515 Patented Design          Maxim's Morrow Bay Lighting Fixture

A comparison of the accused Morrow Bay light fixture with the design claimed in the '515 Patent reveals that the accused fixture has a substantially similar silhouette to that of the '515 Patented design.  In addition, the overall shape and appearance of the finial of the accused fixture is substantially similar in shape and appearance to the '515 Patented design.  With respect to the body of the light fixture (element 2), the '515 Patent design was construed to include a bell-shaped cap with three vertical ridges below it.  The body portion of the '515 Patent design was also construed to include a vase-shaped glass globe with four vertical bars extending from the body cap and curved to mimic the shape of the glass globe.  A lower medallion lies below the vase-shaped globe.  The accused Morrow Bay light fixture also contains a bell-shaped cap with vertical ridges below it, as well as a vase-shaped globe with four vertical bars extending from the cap and curved to mimic the shape of the vase-shaped globe.  In addition, as in the '515 Patented design, the Morrow Bay light fixture contains a lower medallion having a substantially similar shape to that of the patented design.

Because the overall visual impressions of the Morrow Bay light fixture and the '515 patented design are substantially the same, any minor differences (such as the addition of leaves to the Morrow Bay finial or the removal of a single vertical ridge from the base of the cap) would go unnoticed by an ordinary observer, particularly given the amount of attention that an ordinary observer would give to lighting products when making a purchase.  Again, such minor distinctions do not alter the overall visual impact of the designs as a whole, which is the correct inquiry in the ordinary observer test.

As demonstrated above, numerous similarities exist between the '515 Patented design and the Morrow Bay light fixture.  Moreover, the various design features, when viewed in combination, create the same distinctive overall look.  *See L.A. Gear*, 988 F.2d at 1126.  A reasonable fact finder could therefore conclude that an ordinary observer, giving such attention

as a purchaser usually gives, would believe that the two light fixture designs are substantially the same. *Gorham*, 81 U.S. at 528. Accordingly, because of the numerous similarities in the overall visual impression created by the patented and accused Morrow Bay light fixture, no genuine issues of material fact exists, and the Court can find that Plaintiff has satisfied the substantial similarity test.

**2.  The Similarities of the Accused Morrow Bay Light Fixture to the Patented Design Result from an Appropriation of Novel Features Shown in the '515 Patent.**

**a.  The '515 Patent design has four points of novelty over the prior art.**

In response to Defendants' Interrogatories, Plaintiff identified the following points of novelty of the '515 Patent design:[4]

1.  a finial having a substantially bell-shaped upper section and a lower flared section tapering from top to bottom;

2.  a vase-shaped globe with a plurality of vertical bars with vertical ridges mimicking the shape of the globe, each vertical bar topped with a decorative feature overlaying the circular band having a horizontal ridge that fits into the bell-shaped cap;

3.  a lower medallion having an inverted bell shape with a wider upper diameter and narrower lower diameter; and

4.  the combination of the novel decorative features of the '515 Patent design.

In examining the '515 Patent design, the U.S. Patent Office reviewed twenty-nine references, including twenty-three prior art patents, and the Office found the '515 Patent design to be patentable over those references. Accordingly, the '515 Patent is presumed valid over each

---

4 Plaintiff first identified the points of novelty of the '515 Patent design in its answers to Interrogatories on March 26, 2007. On September 17, 2007, Plaintiff amended its Answers to Interrogatories, including an amended identification of the points of novelty of the '515 Patent design. (APP 254-266).

of these references.   35 U.S.C. § 282. In addition to these twenty-nine references, Defendants

have alleged that a number of additional references are invalidating prior art to the '515 Patent.[5]

Copies of the 29 prior art references cited during prosecution of the '515 Patent are

attached at APP 34-147.  Attached at APP 138-155 are copies of references that the Defendants

alleged to be prior art to the '515 Patent.  Comparison of these references with the '515 Patented

design readily identifies the foregoing points of novelty.  For the Court's convenience, the

following chart illustrates the differences between the most relevant prior art cited during

prosecution of the '515 Patent and the '515 Patented design.  More importantly, the chart further

illustrates that **none** of the prior art contains the points of novelty found in the '515 Patented

design.

| Prior Art References considered by U.S. Patent Office[6] | Differences Between Reference and Relevant Point(s) of Novelty of '515 Patent |
|---|---|
| U.S. Patent No. D81,452  | Does not have circular band having a horizontal ridge **that fits into** a bell-shaped cap as required by point of novelty no. 2. |
| U.S. Patent No. D199,144 | Does not have a finial having a substantially **bell-shaped upper section** and a lower flared section tapering from top to bottom as required by point of novelty no. 1. Does not have each vertical bar **topped with a decorative feature** overlaying the circular |

---

5 To prove the '515 Patent invalid, Defendants must show by clear and convincing evidence that the prior art includes all of the points of novelty of the design.  *Avia Group Int'l,* 853 F.2d at 1552.  As shown below, Defendants' references **do not** include any of the points of novelty identified by Plaintiff for the '515 Patent.

6 Plaintiff has not listed each of the twenty-three prior art patents considered by the Patent Office.  Rather, Plaintiff has illustrated only those prior art designs closest to the patented design.



| | |
|---|---|
| *ig.3* *Fig.1* | band having **a horizontal ridge that fits into** the bell-shaped cap as required by point of novelty no. 2. |
| U.S. Patent No. D428,662 *Fig.3* | Does not have a finial having a substantially **bell-shaped upper section** and a lower flared section tapering from top to bottom as required by point of novelty no. 1. Does not have **a vase-shaped globe** as required by point of novelty no. 2. |
| U.S. Patent No. D440,002 | Does not have a plurality of vertical bars with **vertical ridges** mimicking the shape of the globe as required by point of novelty no. 2. |
| U.S. Patent No. D420,760 | Finial does not have a substantially bell-shaped upper section and a lower flared section tapering from top to bottom as required by point of novelty no. 1. |

Moreover, none of the references considered by the U.S. Patent Office during prosecution of the '515 Patent show: a lower medallion having an inverted bell shape with a wider upper diameter and narrower lower diameter, or the combination of the first three novel decorative features of the '515 Patent design.

Furthermore, none of the references relied upon by Defendants show the points of novelty of the '515 Patent design. For the Court's convenience, the following chart illustrates the differences between the most relevant references produced by Defendants and the '515 Patented design. Again, the following chart further illustrates that **none** of Defendants' cited references contains the points of novelty found in the '515 Patented design.

| Prior Art References Produced by Defendants (Bates no.)[7] | Differences Between Reference and Relevant Point(s) of Novelty of '515 Patent |
|---|---|
| Maxim 00022  | Does not have each vertical bar **topped with a decorative feature** overlaying the circular band having **a horizontal ridge that fits into** the bell-shaped cap as required by point of novelty no. 2. |

---

7 Plaintiff has not listed each of the references relied upon by Defendants. Rather, Plaintiff has illustrated only those references showing designs closest to the patented design. Plaintiff has taken this approach for each of the patents discussed herein.

| Maxim 00127 | Does not have **a plurality of vertical bars with vertical ridges** mimicking the shape of the globe, each vertical bar **topped with a decorative feature** overlaying the circular band having **a horizontal ridge that fits into** the bell-shaped cap as required by point of novelty no. 2. |
| --- | --- |
|  | |
| Maxim 00040 | Does not have each vertical bar **topped with a decorative feature** overlaying the circular band having **a horizontal ridge that fits into** the bell-shaped cap as required by point of novelty no. 2. |
|  | |
| Maxim 00042 | Does not have each vertical bar **topped with a decorative feature** overlaying the circular band having a horizontal ridge **that fits into** the bell-shaped cap as required by point of novelty no. 2. |
|  | |

In addition to the foregoing, **none** of the references relied upon by Defendants shows: a lower medallion having an inverted bell shape with a wider upper diameter and narrower lower diameter, or the combination of the first three novel decorative features of the '515 Patent design.

Because none of the points of novelty identified by Plaintiff is in the prior art of record, the '515 Patent is presumed valid and has the five points of novelty enumerated above. *See Avia Group Int'l*, 853 F.2d at 1554 (copying is additional evidence of nonobviousness). Therefore, the next step in the Court's analysis is to determine whether these points of novelty are present in the accused light fixtures.

> **b.     The Morrow Bay Light Fixture Appropriates the Points of Novelty that Distinguish the '515 Patent from the Prior Art.**

As discussed in connection with the substantial similarity analysis, the Morrow Bay light fixture incorporates the novel features of the '515 Patented design. In particular, the substantial similarity between the Morrow Bay light fixture and the '515 Patented design results, at least in part, from the inclusion of: (1) a finial having a substantially bell-shaped upper section and a lower flared section; (2) a vase-shaped globe with vertical bars with vertical ridges mimicking the shape of the globe, each vertical bar topped with a decorative feature overlaying the circular band having a ridge that fits into the bell shaped cap; (3) a lower medallion having an inverted bell shape with a wider upper diameter and narrower lower diameter; and (4) the combination of the foregoing novel features into the Morrow Bay light fixtures. *See* Figure 4 below. Accordingly, because the Morrow Bay light fixture incorporates the features that distinguish the design claimed in the '515 Patent from the prior art, the point of novelty test is satisfied.

**FIGURE 4**



**Minka's '515 Patented Design**          **Maxim's Morrow Bay Lighting Fixture**

**E.      The Court Has Construed the '591 Patent Claim.**

In accordance with the first step of the infringement analysis, the Court has construed the

claim of the '591 Patent as follows:

> The claim of the '591 patent is [t]he ornamental design for the lamp support arm, as shown and described."  The design of the lamp support arm in the '591 patent is a candy cane-shaped scroll having a visible square cross section along its length.  The upper end is substantially closed and has an ornamental extension that provides a decorative cap extending downwardly from the closed upper end. The center portion is substantially straight.  The lower end is substantially open. Each end is approximately ball shaped, and has a decorative petal or leaf feature located near each end that flares outwardly from the scroll.

The Court's claim construction notes the ornamental features that produce the overall

appearance of the design.  *OddzOn*, 122 F.3d at 1405; *ZB Indus. Inc.*, 56 U.S.P.Q.2d at 1741.  In

applying the claim construction of the '591 Patent claim to the accused design during the first

step of the infringement analysis, however, it is the overall appearance of the design, **not** the

individual ornamental features, that control.  *Elmer*, 67 F.3d at 1577; *Braun*, 975 F.2d at 820.

**F.**   **An Ordinary Observer Would Find that the Cambria Light Fixture Support Arm is Substantially Similar to the '591 Patent Design, and that the Cambria Fixture Support Arm Appropriates the Novel Features of the '591 Patent.**

**1.**   **A Visual Comparison of the Cambria Light Fixture Support Arm with the '591 Patent Design Demonstrates Substantial Similarity.**

The '591 Patent covers the ornamental design of a lighting fixture support arm. Defendants' Cambria Light Fixture includes a support arm that is substantially similar in overall visual appearance to the '591 Patented design.   A visual comparison of the '591 Patented design and the Cambria arm reveals that the Cambria arm has an overall ornamental appearance that is substantially similar to the design in the '591 Patent.   One of the most noticeable features of the Cambria arm is its silhouette or contour when viewed from the side.   This silhouette includes the same distinguishing features of (and is virtually identical to) the '591 Patented design.   *See* Figure 5.

**FIGURE 5**



**Minka's '591 Patented Design**            **Maxim's Cambria Lighting Fixture**

The Cambria arm also consists of a candy-cane shaped scroll having an upper end (1) that is substantially closed and a lower end (2) that is substantially open.   *See* Figure 5 above. Further, each end of the Cambria arm is ball shaped (3), and the upper end of the Cambria arm

contains a decorative petal (4) that flares outwardly from the candy-cane shaped scroll design. *See id.*

Because the overall visual impressions of the Cambria light fixture arm and the '591 Patented design are the same, any small differences (such as a square cross section on the scroll) would go unnoticed by an ordinary observer. Again, such minor distinctions do not substantially alter the overall appearance of the design as a whole. *See Goodyear*, 162 F.3d at 1117 (minor changes in design often readily made without changing overall appearance). In addition, the likelihood that ordinary purchasers would be deceived into purchasing the Morrow Bay light fixture based on its similarity to the '591 Patented design is further demonstrated by the relatively short amount of time that light fixture consumers typically spend making a purchasing decision. (Wilson Decl. ¶ 6, APP 5). Accordingly, because of the numerous similarities in the overall visual impressions created by the patented and accused designs, no genuine issue of material fact exists and the Court may properly conclude that the Plaintiff has satisfied the substantial similarity.

> **2.  The Similarities of the Accused Cambria Arm to the Patented Design Result from an Appropriation of Novel Features Shown in the '591 Patent.**
>
> > **a.  The '591 Patent design has four points of novelty over the prior art.**

In response to Defendants' Interrogatories, Plaintiff identified the following points of novelty of the '591 Patent include:[8]

1.  a candy cane-shaped support arm;

2.  a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm;

---

[8] Plaintiff first identified the points of novelty of the '591 Patent design in its answers to Interrogatories on March 26, 2007. On September 17, 2007, Plaintiff amended its answers to Interrogatories, but did not amend its previous identification of the points of novelty of the '591 Patent design. (APP 254-266).

3.      the asymmetrical profile of the candy cane shape of the support arm with a
substantially closed end at the upper tip of the support arm; and

4.      the combination of the novel decorative features of the '591 Patent design.

The prior art determines the foregoing points of novelty of the '591 Patent design as such features are not found in the prior art.  *Elmer*, 67 F.3d at 1577 (citing *Oakley, Inc. v. International Tropic-Cal, Inc.*, 923 F.2d 167, 169 (Fed. Cir. 1991)).

In determining that the '591 Patent design was novel and nonobvious over the prior art, the U.S. Patent Office considered six references, including three prior art patents, and the '591 Patent is presumed valid over each of these references.  Copies of these references are attached at APP 156-179.   Examination of these references readily identifies the foregoing listed points of novelty.  For the Court's convenience, the following chart illustrates the differences between the most relevant prior art cited during prosecution of the '591 Patent and the patented design.  More importantly, the chart further illustrates that **none** of the prior art contains the points of novelty found in the '591 Patented design.

| References Considered by U.S. Patent Office[9] | Differences Between Reference and Relevant Point(s) of Novelty of '591 Patent |
|---|---|
| U.S. Patent No. D426,672 <br><br> *Fig.2* | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially closed;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |

_____

9 Plaintiff has listed each of the two prior art patents and non-patent prior art considered by the Patent Office.

| U.S. Patent No. D427,721 | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially closed;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |
|---|---|
| Fig.1 | |
| National Lighting Supply – Arm Castings | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially closed;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |
|  | |

In addition to the references considered by the U.S. Patent Office, and over which the '591 Patent design was found patentable, the Defendants have produced documents purported to be prior art to and allegedly invalidating the '591 Patent. Attached at APP 180-185 are copies of references that Defendants alleged are prior art to the '591 Patent.  As with the references relied upon by the U.S. Patent Office, **none** of the references cited by Defendants show the points of novelty of the '591 Patent design. For the Court's convenience, the following chart illustrates the differences between the most relevant references cited by Defendants and the '591 Patent design.

| References produced by Defendants (Bates No.) | Differences Between Reference and Relevant Point(s) of Novelty of '591 Patent |
|---|---|
| Maxim 00008<br><br>2822-RS | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially closed;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |
| Maxim 00011<br> | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially open;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |

| Maxim 00012 | Does not have any of the following:<br>(1) a candy cane-shaped support arm;<br>(2) a substantially closed end at the upper tip and substantially open end at the lower tip of the support arm – both ends substantially open;<br>(3) the asymmetrical profile of the candy cane shape of the support arm with a substantially closed end at the upper tip of the support arm; or<br>(4) the combination of these novel decorative features as required by points of novelty no. (1) – (4). |
|---|---|
|  | |

Because the prior art does not disclose the points of novelty identified above, the '591 Patent is presumed valid and has the four points of novelty enumerated above.  *See Avia Group Int'l*, 853 F.2d at 1554.  Therefore, the next step in the Court's analysis is to determine whether these points of novelty are present in the accused light fixtures.

        **b.**     **The Cambria Arm Appropriates the Points of Novelty that Distinguish the '591 Patent from the Prior Art.**

As discussed in connection with the analysis of substantial similarity, the Cambria light fixture incorporates the novel features of the '591 Patented design.  In particular, the substantial similarities between the Cambria light fixture and the '591 Patented design result from a combination of (1) a candy-cane shaped support arm; (2) a closed end at the upper tip and open end at the lower tip of the support arm; and (3) the asymmetrical profile of the candy cane shape of the support arm with a closed end at the upper tip of the support arm.  *See* Figure 6 below. Because the Cambria arm incorporates the novel features that distinguish the design claimed in the '591 Patent from the prior art, Plaintiff has satisfied the points of novelty test.

**FIGURE 6**



**Minka's '591 Patented Design**          **Maxim's Cambria Lighting Fixture**

### G.      The Court Has Construed the '052 Patent Claim.

In accordance with the first step of the infringement analysis, the Court has construed the

claim of the '052 Patent as follows:

> The claim of the '052 patent is [t]he ornamental design for a light globe, as shown
> and described." The design of the light globe in the '052 patent is a combination
> of an upper portion, a central body, and a base. The upper portion's rim is open
> and flares outwardly. The outer surface of the upper portion contains a plurality
> of vertical, rounded rectangular ridges separated evenly by spaced recesses
> around its circumference. The upper portion has a rounded ridge at its lower edge
> that abuts the central body. The central body is tulip shaped; its surface is
> covered by an evenly spaced, repeated, leaf-like design. The leaf-like design is
> comprised of a vertical leaf-like design and an immediately adjacent, inverted
> leaf-like design. The leaves of the leaf like design are connected to each other via
> a vine design. The base portion includes a ring below which is a cup-shaped
> bottom portion, with a cross-hatched surface appearance. The base portion is
> substantially smaller than the upper portion and the central body.

The Court's claim construction notes "the ornamental features that produce the overall

. . . appearance of the design." *OddzOn*, 122 F.3d at 1405; *ZB Indus. Inc.*, 56 U.S.P.Q.2d at

1741. In applying the claim construction of the '052 Patent to the accused design during the first

step of the infringement analysis, however, it is the overall appearance of the design, **not** the individual ornamental features, that control. *Elmer*, 67 F.3d at 1577; *Braun*, 975 F.2d at 820.

### H. An Ordinary Observer Would Find that the Tuscan Estate Fixture is Substantially Similar to in the '052 Patent Design, and that the Tuscan Estate Light Fixture Appropriates the Novel Features of the '052 Patent.

#### 1. A Visual Comparison of the Tuscan Estate Light Fixture with the '052 Patent Design Demonstrates Substantial Similarity.

A visual comparison of the '052 Patented design and the Tuscan Estate light fixture reveals that the Tuscan Estate has an overall ornamental appearance that is substantially similar to the design in the '052 Patent. One of the most noticeable features of the Tuscan Estate is its silhouette or contour when viewed from the side. *See* Figure 7 below. This silhouette includes the same distinguishing features of (and is virtually identical to) the '052 Patented design. *See id*.

**FIGURE 7**



**Minka's '052 Patented Design**          **Maxim's Tuscan Estate Lighting Fixture**

The Tuscan Estate light fixture consists of a combination of an upper rim (1), a central body (2), and a base (3). *See* Figure 7 above. Further, the Tuscan Estate light fixture's upper rim is open and flares outwardly. In addition, the Tuscan Estate light fixture's upper rim has a rounded edge at its lower edge that abuts the central body, and a base that includes a ring below

which is a cup-shaped bottom portion.  In light of the amount of attention an ordinary purchaser of lighting fixtures would pay in making a light fixture purchase (and as clearly illustrated above), the slight differences in the etched designs would not impact the overall visual impact of the patented and accused designs. Therefore, the Tuscan Estate Lighting Fixture is substantially similar in overall visual appearance to the '052 Patent design.

Again, such minor distinctions do not substantially alter the overall appearance of the design as a whole.  *See Goodyear*, 162 F.3d at 1117 (minor changes in design often readily made without changing overall appearance). Accordingly, because of the numerous similarities in the overall visual impressions created by the patented and accused designs, no genuine issue of material fact exists, and the Court may properly conclude that Plaintiff has satisfied the substantial similarity test.

      **2.**      **The Similarities of the Accused Tuscan Estate to the Patented Design Result from an Appropriation of Novel Features Shown in the '052 Patent.**

      **a.**      **The Design in the '052 Patent is Significantly Different from the Prior Art.**

In response to Defendants' Interrogatories, Plaintiff identified the following points of novelty of the '052 Patent design:[10]

      1.      an upper rim surface, flaring outwardly, and characterized by a scalloped outer surface and

      2.      a filigree design on a cup-shaped central body section.

In determining that the '591 Patent design was novel and patentable over the prior art, the U.S. Patent Office considered thirteen prior art patents, and the '052 Patent is presumed valid over each of these references.  35 U.S.C. § 282. Copies of the references that Plaintiffs identified

---

10 Plaintiff first identified the points of novelty of the '052 Patent design in its answers to Interrogatories on March 26, 2007.  On September 17, 2007, Plaintiff amended its answers to Interrogatories, including amended identification of the points of novelty of the '052 Patent design.  (APP 254-266).

to the Patent Office are attached at APP 186-250.   Examination of these references readily identifies the foregoing points of novelty.  For the Court's convenience, the following chart illustrates the differences between the most relevant prior art cited during prosecution of the '052 Patent and the patented design.  More importantly, the chart further illustrates that **none** of the prior art contains the points of novelty found in the '052 Patented design.

| References Considered by U.S. Patent Office[11] | Differences Between Reference and Relevant Point(s) of Novelty of '052 Patent |
|---|---|
| U.S. Patent No. D395,096  | Does not have an upper rim surface, flaring outwardly, and **characterized by a scalloped outer surface** as required by point of novelty no. 1. |
| U.S. Patent No. D430,341  | Does not have an upper rim surface, **flaring outwardly**, and **characterized by a scalloped outer surface** as required by point of novelty no. 1. |

---

11 Plaintiff has not listed each of the thirteen prior art patents considered by the Patent Office.  Rather, Plaintiff has illustrated only those prior art designs closest to the patented design.

| U.S. Patent No. D430,951  | Does not have an upper rim surface, flaring outwardly, and **characterized by a scalloped outer surface** as required by point of novelty no. 1.<br>Does not have a **filigree design** on a cup-shaped central body section as required by point of novelty no. 2. |
| --- | --- |
| U.S. Patent No. D464,767  | Does not have a **filigree design** on a cup-shaped central body section as required by point of novelty no. 2. |

  In addition to the references considered by the U.S. Patent Office, and over which the '591 Patent design was found patentable, the Defendants have produced documents purported to be prior art to, and invalidating, the '052 Patent. Attached at APP 251-252 are copies of documents produced by Defendants. As with the references relied upon by the U.S. Patent Office, none of the references cited by Defendants show the points of novelty of the '052 Patent design. For the Court's convenience, the following chart illustrates the differences between the most relevant references cited by Defendants and the '052 Patent design.

| References produced by Defendants (Bates No.)[12] | Differences Between Reference and Relevant Point(s) of Novelty of '052 Patent |
|---|---|
| Maxim 00151  | Does not have an upper rim surface, flaring outwardly, and **characterized by a scalloped outer surface** as required by point of novelty no. 1.<br>Does not have a filigree design on a cup-shaped **central body section** as required by point of novelty no. 2. |

Because the Defendants' references do not disclose the points of novelty identified above, the '052 Patent is presumed valid and has the points of novelty enumerated above. *See Avia Group Int'l.*, 853 F.2d at 1554. Therefore, the Court must determine whether these points of novelty are present in the accused light fixtures and must not collapse the point of novelty test into the ordinary observer analysis. As readily shown below, Defendants' Tuscan Estate light fixture incorporates each of these points of novelty.

      **b.**    **The Tuscan Estate Light Fixture Appropriates the Points of Novelty that Distinguish the '052 Patent from the Prior Art.**

As discussed in connection with the analysis of substantial similarity, the Tuscan Estate light fixture incorporates the novel features of the '052 Patented design. In particular, the substantial similarities between the Tuscan Estate light fixture and the '052 Patented design result from the combination of an upper rim that flares outwardly, and is characterized by a scalloped outer surface. Further, the Tuscan Estate light fixture contains a repeating filigree design. The Tuscan Estate light fixture's filigree appropriates the point of novelty of a repeating filigree design on the central cup portion. A side-by-side comparison of the patented and

---

12 The light fixture shown is the only reference cited by Defendants that appears to be relevant to the '052 Patent design.

accused designs readily shows that the filigree of the Tuscan Estate fixture is equivalent, if not identical, to that of the '052 Patented design.  *See Sun Hill*, 48 F.3d  at 1199 (point of novelty is subject to Doctrine of Equivalents).   Accordingly, because the Tuscan Estate light fixture incorporates features that distinguish the design claimed in the '052 Patent from the prior art, Plaintiff has satisfied the point of novelty test.  *See* Figure 8 below.

### FIGURE 8



**Minka's '052 Patented Design                    Maxim's Tuscan Estate Lighting Fixture**

I.      **Even if the Accused Light Fixtures were Found not to Literally Infringe the Patents-in-Suit, Minka is Entitled to Summary Judgment Under the Doctrine of Equivalents.**

Even if the accused light fixtures were found not to literally infringe the Patents-in-Suit, Minka is entitled to summary judgment as a matter of law that the accused light fixtures infringe Minka's Patents-in-Suit under the Doctrine of Equivalents.  As discussed above, the accused light fixtures are sufficiently similar to the patented designs such that an ordinary observer could and likely would find that the accused light fixtures are substantially similar to the patented designs.  In addition, as discussed in the previous analyses regarding the points of novelty, all of the points of novelty are present in the accused light fixtures.  Accordingly, Minka is entitled to summary judgment on the issue of infringement under the Doctrine of Equivalents.

## IV.     CONCLUSION

Minka's Motion for Partial Summary Judgment confirms that no genuine issues of material facts exist regarding whether the Defendants' accused light fixtures infringe the Patent-in-Suit.  In particular, a visual comparison of the overall appearances of the accused light fixtures and the patented designs reveals the existence of objective evidence of substantial similarity between the accused light fixtures and the patented designs.  In addition, there are no genuine issues of material fact regarding whether the accused light fixtures incorporate the novel features of the patented design – they do. Such evidence proves that an ordinary observer could and would find that the accused light fixtures appropriate the novelty of the patented designs. Accordingly, Plaintiff Minka is entitled to summary judgment of infringement as a matter of law.

Respectfully submitted,


 /s/ Lisa H. Meyerhoff
Lisa H. Meyerhoff
Texas Bar No. 14000255
Email:  Lisa.Meyerhoff@Bakernet.com
**BAKER & MCKENZIE LLP**
2300 Trammell Crow Center
2001 Ross Avenue
Dallas, TX  75201
Telephone No.  214 978 3035
Facsimile No.  214 978 3099

Myall S. Hawkins
Texas Bar No. 09250320
Email: myall.hawkins@bakernet.com
Valerie K. Friedrich
Texas Bar No. 00790721
Email:  valerie.k.friedrich@bakernet.com
Todd Y. Brandt
Texas Bar No. 24027051
Email:  todd.brandt@bakernet.com
Tan H. Pham
Texas Bar No. 24046628
Email: tan.pham@bakernet.com
**BAKER & McKENZIE LLP**
711 Louisiana, Suite 3400
Houston, Texas 77002
Telephone No. 713 427 5000
Facsimile No. 713 427 5099

ATTORNEYS FOR PLAINTIFF MINKA
LIGHTING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that, on April 17, 2008, I electronically filed the foregoing "Plaintiff's Brief in Support of its Motion for Partial Summary Judgment" with the Clerk of Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court.  The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means:

Michael D. Pegues
mpegues@munsch.com, jfunicello@munsch.com
Munsch Hardt Kopf & Harr, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, TX 75201-6659

/s/ Lisa H. Meyerhoff