IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MINKA LIGHTING, INC., | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. |
| | § | |
| v. | § | 3:06-CV-995-K |
| | § | |
| MAXIM LIGHTING | § | |
| INTERNATIONAL, INC., et al., | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court are Plaintiff Minka Lighting, Inc.'s Motion for Partial Summary Judgment and Motion to Strike Defendants' Incompetent Summary Judgment Evidence (Doc. Nos. 76 and 81) and Defendants Maxim Lighting International, Inc., Maxim Lighting, Inc., and Maxim Group Companies' Motion for Partial Summary Judgment and Motion to Strike Plaintiff's Supplemental Summary Judgment Evidence (Doc. Nos. 73 and 105).

The Court **GRANTS** Defendants' motion for partial summary judgment. Consequently, Plaintiff's motion for partial summary judgment is **DENIED**. Because the allegedly incompetent summary judgment evidence concerns only points of novelty and are not considered pursuant to this opinion, Plaintiff's motion to strike is **DENIED as moot**. Because the Court would rule for Defendants even if the supplemental affidavit and illustrations to which they object are considered, Defendants' motion to strike is **DENIED**.

## I. Factual and Procedural Background

Plaintiff Minka Lighting, Inc. ("Minka") produces interior and exterior lighting fixtures. Plaintiff's lighting fixtures are distributed through authorized distributors and retail outlets like Home Depot and specialty showrooms. Defendants Maxim Lighting International, Inc., Maxim Lighting, Inc., and Maxim Group Companies (collectively "Maxim") produce competing light fixtures. Both companies display their wares at the Dallas Market Hall, located within this judicial district, and receive a significant portion of their business through orders placed at this marketplace.

Minka filed this action against Maxim alleging, among other things, that Defendants infringed Plaintiff's design patents relating to various lighting fixtures. Specifically, Plaintiff asserts three design patents against Defendants: U.S. Patent Nos. D455,515 ("'515 patent"), D461,591 ("'591 patent"), and D535,052 ("'052 patent"). A fourth claim by Plaintiff, concerning U.S. Patent No. D461,766, was dismissed by order of this Court on July 28, 2008 (Doc. No. 99). The three remaining patents in suit involve an exterior lamp housing, a lamp support arm, and an interior light globe.

Plaintiff and Defendant each moved for summary judgment on the three remaining patent infringement claims. Defendant seeks judgment that its accused products do not infringe the patents in suit, but it has not raised an invalidity argument at this summary judgment stage. Plaintiff's additional claims for copyright infringement and breach of contract are not the subject of the instant motions for summary judgment.

Likewise, Maxim's counterclaims on the copyright claims are not at issue here.

After conducting a hearing, considering oral argument, and reviewing the parties' briefs and related filings, this Court previously construed the disputed claims according to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995). The Court now turns to the parties' motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *U.S. Philips Corp. v. Iwasaki Elec. Co.*, 505 F.3d 1371, 1374 (Fed. Cir. 2007). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

In considering whether genuine issues of material fact exist, the court must determine whether a reasonable jury could return a verdict for the nonmoving party in

the face of all evidence presented. *Id.* at 249. All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

**III. Analysis**

A design patent requires a new, original, and ornamental design. 35 U.S.C. § 171. A design patent is defined by the content of its drawing; the proper construction of a design patent focuses on the overall visual impression of its ornamental, novel features. *See OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997); *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 104 (Fed. Cir. 1996). A design patent protects the nonfunctional aspects of an ornamental design as shown in the patent. *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1577 (Fed. Cir. 1995); *KeyStone Retaining Wall Sys. v. Westrock, Inc.*, 997 F.2d 1444, 1450 (Fed. Cir. 1993).

Infringement of a design patent is the unauthorized manufacture, use, or sale of the article embodying the patented design or any colorable imitation thereof. 35 U.S.C. § 289. The patented and accused designs do not have to be identical for design patent infringement to be found. *OddzOn Prods.*, 122 F.3d at 1405. In infringement analysis, an accused design is compared to the patent drawings to determine whether the accused design infringes the patent, *Elmer*, 67 F.3d at 1577, yet the patentee bears the burden of proof on infringement. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 678 (Fed. Cir. 2008) (en banc), *petition for cert. filed*, (U.S. Feb. 2, 2009) (No. 08-1031).

The Federal Circuit, in *Egyptian Goddess*, clarified the appropriate legal standard to assess claims of design patent infringement. Prior to this decision, design patent cases required courts to apply both the "point of novelty" and "ordinary observer" tests. *See, e.g.*, *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002); *Sun Hill Indus., Inc. v. Easter Unlimited, Inc.*, 48 F.3d 1193 (Fed. Cir. 1995) (mandating both point of novelty and ordinary observer analysis).

The *Egyptian Goddess* opinion eliminated the point of novelty test. Instead, the "'ordinary observer' test should be the sole test for determining whether a design patent has been infringed." *Egyptian Goddess*, 543 F.3d at 678. Indeed, a district court decision granting summary judgment based on the point of novelty test will be vacated and remanded for reconsideration in light of the *Egyptian Goddess* opinion. *E.g.*, *Park B. Smith, Inc. v. CHF Industries, Inc.*, 2009 WL 279051 (Fed. Cir. Feb. 6, 2009) (stating "the point of novelty test . . . was eliminated by *Egyptian Goddess*. . . .").

Thus, the ordinary observer test is the only test upon which this Court may rely in assessing design patent cases. The ordinary observer test is:

> if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Gorham Co. v. White*, 81 U.S. 511, 528 (1871). "The criterion is deception of the ordinary observer." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1124 (Fed.

Cir. 1993). The question, then, "is whether the ordinary observer would be deceived by the accused design because it is substantially similar to the patented design." *Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., Inc.*, 162 F.3d 1113, 1118 (Fed. Cir. 1998). In applying the ordinary observer test, "[c]ourts should take into account similarities and differences" between the patented and accused designs. *FMC Corp. v. Hennessy Indus., Inc.*, 836 F.2d 521, 527 (Fed. Cir. 1987). Under the ordinary observer test, "infringement will not be found unless the accused article 'embod[ies] the patented design or any colorable imitation thereof.'" *Egyptian Goddess*, 543 F.3d at 678 (quoting *Goodyear Tire & Rubber Co.*, 162 F.3d at 1116–17).

The Federal Circuit has effectively divided cases into two categories. "In some instances, the claimed design and the accused design will be *sufficiently distinct* that it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer, as required by *Gorham*." *Egyptian Goddess*, 543 F.3d at 678 (emphasis added). "In other instances, when the claimed and accused designs are *not plainly dissimilar*, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art." *Id.* (emphasis added). "Where there are many examples of prior art designs . . . differences between the claimed and accused designs that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant

with the prior art." *Id.* Thus, if the claimed design and the accused design are sufficiently distinct, no comparison with the prior art is necessary. If they are not readily distinguishable, the ordinary observer analysis should be informed by the prior art. *See Smith v. Whitman Saddle Co.*, 148 U.S. 674, 679–82 (1893) (comparing the patented and accused designs in the context of similar designs found in the prior art).

"The ordinary observer is not any observer, but one who, with less than the trained faculties of the expert, is 'a purchaser of things of similar design,' or 'one interested in the subject.'" *Applied Arts Corp. v. Grand Rapids Metalcraft Corp.*, 67 F.2d 428, 430 (6th Cir. 1933). Because the accused fixtures are sold primarily to the general public, the parties appear to agree that the ordinary observer in this case is a retail consumer who is familiar with the prior art. The ordinary observer is therefore a member of the public who is currently shopping for or has recently purchased lighting fixtures—indeed a "purchaser of things of similar design." *Id.*

In utilizing the ordinary observer test, a court "is not obligated to issue a detailed verbal description of the design if it does not regard verbal elaboration as necessary or helpful." *Egyptian Goddess*, 543 F.3d at 679. Here, however, the Court has previously made a detailed verbal description of the patents in suit. *See Minka Lighting, Inc. v. Maxim Lighting Int'l, Inc.*, No. 3:06-CV-0995-K, 2008 WL 763160 (N.D. Tex. Mar. 18, 2008) (Doc. No. 68) (hereinafter "*Markman Order*"). In accordance with *Egyptian Goddess*, the Court finds that the claimed designs are best represented by the illustrations contained

in each patent. But because the Court has already made such a description, it would be incongruent to completely ignore this previous effort to adequately reduce the patents to words. Although the Court recognizes that its detailed analysis in the *Markman* Order likely exceeds the level of detail noticed by an ordinary observer, the prior analysis helps in comparing some of the similarities and differences an ordinary observer would notice. Therefore, although the Court relies on the drawings in the patents themselves, the Court will include this description to inform its analysis of the figures embodied in the patents. *See Egyptian Goddess*, 543 F.3d at 680 ("We therefore leave the question of verbal characterization of the claimed designs to the discretion of trial judges . . . ."). Defendant has offered to produce "actual, physical models of the commercial embodiments" of the patents in suit. Such production is unnecessary based on the Court's thorough review of the patents and the accused designs.

Although the parties' motions for summary judgment were filed prior to the *Egyptian Goddess* decision, the Court subsequently asked for and received additional briefing in light of that opinion. Accordingly, the Court considers these additional arguments and considers the claim of each design patent in turn.

### A. '515 Patent

The '515 patent concerns "[t]he ornamental design for the lamp housing, as shown and described." As previously construed by this Court:

> the design of the lamp housing in the '515 patent is a combination of a top finial, a body, and a lower medallion. The top finial has two sections with

a substantially bell-shaped upper section covered in a plurality of evenly spaced ornamental leaves and a lower flared section tapering from top to bottom. The lower tapered section of the top finial abuts an upper most ring of the design's body. The body has a cap that is substantially bell shaped with three circular rings at its top section. Below the body cap is a band having a horizontal ridge that fits into the bell-shaped cap; below the horizontal ridge is a tapered convex ridge that flows into a second horizontal ridge. Below the second horizontal ridge is a tapered concave ridge that encloses the upper portion of the caged body. The caged body portion includes a vase-shaped globe with four vertical bars having vertical ridges extending from the circular band of the body cap to the lower medallion and curved to outline the shape of the glass globe. The lower medallion has concave sides with a wider diameter at a top end and tapering to a smaller diameter at a lower end.

*Markman Order*, 2008 WL 763160, at *1. Juxtaposed below are a design patent drawing of Plaintiff's '515 patent on the left and a photograph of Defendants' accused Morrow Bay design on the right:

 

The '515 Patent                Defendants' Morrow Bay design

Plaintiff contends that Defendants' Morrow Bay fixtures infringe the '515 patent based upon substantial similarities that would deceive an ordinary observer. It contends that Defendants' fixtures have a substantially similar silhouette and produce the same overall visual impression as the '515 patent, which is embodied commercially in Minka's Ardmore lantern. A district court properly limits its interpretation of "the scope of the patent to its overall ornamental visual impression, rather than to the broader general design concept. . . ." *OddzOn Prods.*, 122 F.3d at 1405; *see also Durling*, 101 F.3d at 104 ("A proper interpretation of [the patentee's] claimed design focuses on the visual impression it creates."). Defendants assert that Plaintiff's infringement claims "constitute a thinly veiled attempt to claim proprietary rights in general design concepts." Def.'s Resp. at 8.

The Court finds that an ordinary observer of Defendants' accused designs would be left with the impression that it is substantially different from the '515 patent. Comparing the figures of the '515 patent with the accused designs, the Court determines that the overall visual impressions are distinct, and it is readily apparent that an ordinary observer would not be confused. There are several differences that would be readily apparent to an ordinary observer.

First, the very silhouette of which Plaintiff complains is readily distinguishable. The glass globe of Plaintiff's '515 design has a vase shape that curves noticeably toward the lower end. Defendants' accused design has a globe that bows convexly from its upper

end to the lower end. The result is that Plaintiff's '515 design appears to carry its weight more evenly than does Defendants' design, which appears more top-heavy.

Second, the top finial of Defendants' Morrow Bay fixtures has three sections. As noted, the finial of the '515 patent has two sections. The '515 patents' top finial is further "covered in a plurality of evenly spaced ornamental leaves," whereas the top finial of Defendants' design lacks any obvious ornamental design elements.

Third, the Morrow Bay fixtures have noticeably more ornamentation than the '515 patent. Specifically, Defendants fixtures have a series of petal- or frond-shaped ornamental ridges along the fixture's cap. The '515 design lacks this ornamentation. Instead, it includes a square crossed with an "x" in roughly the equivalent location. The result is that Plaintiff's '515 design appears more geometric, whereas Defendants' design is more organic.

Fourth, the lower medallions of the two designs are readily distinguishable. Defendants' lower medallion is adorned with petal-shaped ridges. The '515 patent has no discernible ornamental elements on the lower medallion. Further, Defendants' Morrow Bay fixtures have two distinct sections on the lower medallion, whereas the '515 patent has one. The result is that Defendants' fixtures appear to "sit" much higher than the '515 design—again contributing to an overall dissimilar impression.

This is not an exhaustive list of differences, but the Court believes it accurately represents distinguishing features that would be readily apparent to an ordinary observer.

The aggregation of these differences create a distinct overall visual impression and overwhelm the similarities between the designs.

Although the Court is satisfied that the '515 patent and Defendants' accused designs are readily distinguishable to an ordinary observer, a full analysis may include "a comparison of the claimed and accused designs with the prior art." *Egyptian Goddess*, 543 F.3d at 678. Similar silhouettes or comparable contours between a patented and accused design can make them "not plainly dissimilar," thus counseling comparison with the prior art. Yet such general design concepts alone are insufficient to show infringement, particularly when the prior art is replete with similar designs. *See OddzOn Prods.*, 122 F.3d at 1405 (rejecting the notion that "the overall similarity of . . . appearance is sufficient to show infringement").

Plaintiff includes twenty-nine prior art references, including five it deems "most relevant." Pl.'s Brief at 16. Defendant cites several prior art examples, including U.S. Patent Nos. D420,760, D394,325, D77,410, and D63,205, as well as the "Oakhurst" fixture by Environmental Lighting For Architecture, Inc. ("ELA"), and various fixtures by Corbett Lighting. All were available to the public more than one year before the '515 patent's application date of May 10, 2001, as required by 35 U.S.C. §102(b). Indeed, the prior art history is lengthy: the '205 patent issued in 1923.

The prior art citations reveal the lamp housing in both Plaintiff's '515 patent and Defendants' accused designs employ design features well-known in the prior art. For

instance, the '205 patent incorporates squares crossed with an "x" along the fixture's cap. The '410 patent, issued in 1929, incorporates vertical bars along the body with leaf designs along the cap. The prior art designs include a top finial, body, and lower medallion, as Defendants note, and further incorporate a similar general silhouette. The particular design features of the '515 patent include the same basic design elements, as do Defendants' Morrow Bay fixtures.

Under the ordinary observer standard, a patented design that consists "only of bringing together old elements with slight modifications of form" is not infringed by "another who uses the same elements with his own variations of form . . . if his design is distinguishable by the ordinary observer from the patented design." *Zidell v. Dexter*, 262 F. 145, 146 (9th Cir. 1920). As the *Egyptian Goddess* opinion noted, the *Zidell* court "emphasized that the defendant's product would appear different from the plaintiff's protected design to an ordinary observer aware of the great number of closely similar prior art designs." *Egyptian Goddess*, 543 F.3d at 676.

Here, Defendants' product would appear different from the Plaintiff's '515 patent to any ordinary observer aware of the great number of similar prior art designs. It is thus apparent that an ordinary observer familiar with the prior art would not be deceived into purchasing Defendants' Morrow Bay fixture thinking it to be Plaintiff's patented design. Thus, the Court concludes that no jury could reasonably find that Defendants' Morrow Bay fixtures infringe Plaintiff's '515 patent. Summary judgment is appropriate for

Defendants on this claim.

   B.   '591 Patent

The claim of the '591 patent is [t]he ornamental design for the lamp support arm, as shown and described." As previously construed by this court:

> The design of the lamp support arm in the '591 patent is a candy cane-shaped scroll having a visible square cross section along its length. The upper end is substantially closed and has an ornamental extension that provides a decorative cap extending downwardly from the closed upper end. The center portion is substantially straight. The lower end is substantially open. Each end is approximately ball shaped, and has a decorative petal or leaf feature located near each end that flares outwardly from the scroll.

*Markman Order*, 2008 WL 763160, at *2. Juxtaposed below are a design patent drawing of Plaintiff's '591 patent on the left and a photograph of Defendants' accused Cambria design on the right:




The D'591 Patent                    Defendants' Cambria design

Plaintiff contends Defendants' Cambria fixtures are substantially similar in overall visual appearance to the '591 patent, which is embodied commercially in Minka's Harrison fixture. Plaintiff cites the "silhouette or contour" when Defendants' accused design for the lamp support arm is viewed from the side.

The similarities between the patented and accused designs include their incorporation of a lamp support arm and a "scroll" design. The similarities mostly end there. Most notably, Defendants' fixtures include a distinct ornamental "hook" in the center portion of the lamp support arm. Although both the '591 patent and the Cambria fixtures incorporate a scroll design, the upwardly curved hook extending from the center portion of the Cambria fixture makes it readily distinguishable from the '591 patent. The difference is obvious at first glance. This hook makes Defendants' Cambria fixture appear to have three appendages, whereas the '591 patent appears to have just two. The designs do not share a similar silhouette and convey different overall ornamental visual impressions.

In addition, either end of the '591 patent's scroll is wound tightly, whereas the Cambria's scroll appears much more loosely bound at the ends. The center portion of the '591 patent's scroll is substantially straight, whereas the Cambria support arm is substantially curved. The '591 patent also incorporates a decorative leaf or petal that appears to flare outward and upward near either end. Defendants' fixtures do have a flare near the end, but it extends slightly outward and down. These differences would

be seized upon by an ordinary observer, who would not be deceived into purchasing Defendants' products thinking they were Plaintiff's patented design. Even accepting the contention of Plaintiff's proffered expert Pat Wilson that the average retail consumer would spend about fifteen minutes deciding on fixtures, it is apparent to the Court that an ordinary observer would perceive the differences in less than fifteen *seconds*.

Were the Court to find infringement by Defendants' dissimilar product, it would effectively broaden the scope of Plaintiff's patent to cover all lamp support arms that incorporate a scroll design. *See In re Mann*, 861 F.2d 1581, 1582, (Fed. Cir. 1988) ("Design patents have almost no scope."). Thus, because the two designs are plainly dissimilar and Plaintiff has not met its burden, the analysis requires no reference to the prior art. *See Egyptian Goddess*, 543 F.3d at 678 (stating that if the designs are "sufficiently distinct" it is "clear without more" that patentee has not met its burden). Consequently, the Court grants summary judgment for Defendants, finding no infringement of the '591 patent.

### C. '052 Patent

The claim of the '052 patent is [t]he ornamental design for a light globe, as shown and described." As previously construed by this Court:

> The design of the light globe in the '052 patent is a combination of an upper portion, a central body, and a base. The upper portion's rim is open and flares outwardly. The outer surface of the upper portion contains a plurality of vertical, rounded rectangular ridges separated evenly by spaced recesses around its circumference. The upper portion has a rounded ridge at its lower edge that abuts the central body. The central body is tulip

shaped; its surface is covered by an evenly spaced, repeated, leaf-like design. The leaf-like design is comprised of a vertical leaf-like design and an immediately adjacent, inverted leaf-like design. The leaves of the leaf like design are connected to each other via a vine design. The base portion includes a ring below which is a cup-shaped bottom portion, with a cross-hatched surface appearance. The base portion is substantially smaller than the upper portion and the central body.

*Markman Order*, 2008 WL 763160, at *2. Juxtaposed below are a design patent drawing of Plaintiff's '052 patent on the left and a photograph of Defendants' accused Tuscan Estate design on the right:


The '052 Patent


Defendants' Tuscan Estate design

The light globe of the Defendants' Tuscan Estate Collection fixtures is at issue here. Plaintiff contends that Defendants' accused globe is substantially similar to its '052 patent, embodied commercially in Minka's Treville fixture.

Defendants' accused Tuscan Estate Collection fixtures, like Plaintiff's patented design, feature a translucent light globe adorned with a leaf and vine design. Yet the two

designs have distinctive overall impressions.

The central body of the Tuscan Estate globe is noticeably wider and shorter than the body in the '052 patent. If the '052 patent has a "tulip" shape, Defendants' fixture is shaped more like a fully bloomed rose. Defendants' fixture appears stouter than Plaintiff's more delicately shaped design. The silhouettes and contours of the designs are markedly distinct, leaving an overall dissimilar impression.

Although the Court is satisfied that the '052 patent and Defendants' accused design are readily distinguishable, references to the prior art may help to inform a full analysis. Plaintiff cites thirteen prior art patents considered by the U.S. Patent Office in considering the '052 patent. Defendants cite prior art contained in a "Renaissance Guild" catalog produced by Savoy House. All were available to the public more than one year before the '052 patent's application date of Jan. 4, 2006.

The prior art of the designs reveals the designs effectively "bring[ ] together old elements with slight modifications of form." *Zidell*, 262 F. at 146. For instance, U.S. Patent No. D430,951 reveals a virtually identical tulip-shaped silhouette to Plaintiff's '052 patent. Ornamentation of leaves and vines appears on U.S. Patent Nos. D395,096 and D430,341 as well as the Renaissance Guild design. The ridged or "scalloped" upper portion of both companies' light globes appeared in the '341 patent and in U.S. Patent No. D464,767. The Defendants' accused design thus would appear sufficiently different from the Plaintiff's '052 patent to any ordinary observer aware of the great number of

similar prior art designs. Any similarity between Defendants' accused design and the '052 patent is no greater than the similarities between the designs of the '052 patent and the prior art.

Under an ordinary observer test, no jury could reasonably find that an ordinary observer would be deceived into confusing Defendants' design with Plaintiff's '052 patent. Consequently, Defendant Maxim is entitled to summary judgment of noninfringement on this claim and on all the patents-in-suit.

## IV. Conclusion

For these reasons, Defendants' motion for summary judgment is **GRANTED**. The Court holds that Defendants' accused designs do not infringe the '515, '052, and '562 patents respectively. Plaintiff's motion for summary judgment is **DENIED**.

The copyright infringement claims remain set for trial on the Court's three-week docket beginning **April 6, 2009**. The parties are hereby **ORDERED** to meet and confer and provide a status report to the Court within seven (7) days of the date of this order. All other pretrial deadlines remain unchanged.

**SO ORDERED.**

Signed March 16, 2009.

_Ed Kinkeade_
Ed Kinkeade
United States District Judge